[No. 20280–4–I. Division One. May 23, 1988.]

GARY STEWARD, ET AL, *Appellants,* v. BRUNO GOOD, ET AL, *Respondents.*

*Kristine A. Chrey* and *Witherspoon, Kelley, Davenport & Toole,* for appellants.

*Lawrence J. Warren* and *Warren & Kellogg, P.S.,* for respondents Good.

*Andrew C. Gauen* and *Merrick, Hofstedt & Lindsey,* for respondents Faull.

*Richard A. Jackson* and *Anderson & Jackson,* for respondent Benson Realty, Inc.

GROSSE, J.—Gary and Shirley Steward appeal an order on summary judgment which quieted title to certain real

estate in favor of Bruno and Ann Good. The Goods' title issued pursuant to a nonjudicial foreclosure sale under the Washington deed of trust act (RCW 61.24.010 *et seq.*). The Stewards' primary contention on appeal is that issues of fact existed with respect to the trustee's failure to strictly comply with the statutory prerequisites of the deed of trust act and with respect to the adequacy of the purchase price, both of which precluded the entry of a summary judgment. The Stewards also allege that the Goods were not bona fide purchasers for value. For their part, the Goods contend the Stewards waived any rights to contest the trustee's sale because they had adequate notice of the foreclosure but then failed to utilize any presale remedies. The Goods also contend the Stewards are precluded from raising the bona fide purchaser issue for the first time on appeal.

The original owners of the condominium in issue here, the Worleys, granted a deed of trust in favor of Benson Realty, Inc., to secure the repayment of an obligation in the amount of $3,000. At a later date, the Worleys conveyed the condominium by quitclaim deed to the Terhunes who later conveyed the property by statutory warranty deed to the Stewards. This transfer to the Stewards was in September of 1984, for the approximate amount of $64,000.

The original deed of trust designated Transamerica Title Insurance Company as the trustee. The title company resigned as trustee on March 21, 1986. Thereafter, on March 24, 1986, Benson Realty appointed Gary Faull as successor trustee, and on March 26, 1986, the resignation and the appointment of the successor were recorded. On March 17, 1986, 9 days before his appointment, Faull mailed a notice of default to the Stewards and other interested parties. The Stewards have not denied receiving a copy of the notice. The notice of sale was dated April 17, 1986, and was filed on June 17, 1986. Faull conducted a sale on July 18, 1986. Benson Realty bid in the indebtedness owed to it. The Goods then bid a greater sum ($4,870) and became the property owners.

The issue presented in this case is whether, and under what circumstances, a party may obtain post–sale relief from a trustee's sale, *i.e.*, set it aside, where the subject real property has been sold to third party strangers to the original transaction. We believe the recent case of *Koegel v. Prudential Mut. Sav. Bank,* 51 Wn. App. 108, 752 P.2d 385 (1988) is dispositive of the issue raised by the Stewards with regard to strict compliance with the nonjudicial fore-closure procedures. However, the facts in the case before us suggest additional issues requiring consideration and dis-cussion.

Here, the third party strangers, the Goods, claim the status of bona fide purchasers and argue that once an established bona fide purchaser purchases, there may be no post–sale relief for alleged irregularities in the sale. RCW 61.24.040(7). *See also* Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Wash-ington,* 59 Wash. L. Rev. 323, 336 (1984). We agree with that proposition but are constrained to review the Stew-ards' claim that summary judgment on this issue was improper because there is a genuine issue of fact as to the status of the Goods in that regard. In the case at bar, the trial court quieted title by summary judgment. The essen-tial facts are not in dispute; therefore, we as the reviewing court must determine whether the Goods are entitled to summary judgment as a matter of law. *See Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

Although the Stewards did not expressly designate part of their challenge in the trial court as "the Goods were not bona fide purchasers," they did raise the issue of the inadequacy of the purchase price. Whether the Goods were bona fide purchasers is a question of mixed law and fact. *Miebach v. Colasurdo,* 102 Wn.2d 170, 175, 685 P.2d 1074 (1984) (citing *Hudesman v. Foley,* 73 Wn.2d 880, 889–91, 441 P.2d 532 (1968)). "A bona fide purchaser for value is one who without notice of another's claim of right to, or equity in, the property prior to his acquisition of title, has

paid the vendor a valuable consideration." *Glaser v. Holdorf,* 56 Wn.2d 204, 209, 352 P.2d 212 (1960).

"It is a well-settled rule that where a purchaser has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if followed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser will be held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed."

(Citation omitted.) *Peterson v. Weist,* 48 Wash. 339, 341, 93 P. 519 (1908). *See* 2 J. Pomeroy, *Equity* § 605 (5th ed. 1941).

A review of the record persuades us that the Goods were, in fact, bona fide purchasers for value. The affidavit of Bruno Good indicates: At or before the time of the sale, the Goods had little real estate investing experience; they had no notice of any claims of any defects in the sale, nor were they aware of any other party's claim to, any right to, or equity in, the property that might defeat a trustee's deed; further, before the sale, the Goods had not met the trustee nor had any communication from him that would indicate any defects in the presale procedure. Ann Good went to the sale, and after the opening bid, made a slightly higher bid. Thereafter she was informed she had won the auction for the property. Valuable consideration, *i.e.,* $4,870, was paid for the right to the property. Thus, the Goods showed they lacked any actual notice and also showed the payment of a valuable consideration. The burden of showing that the purchase price was so inadequate as to put the Goods on inquiry notice then shifted to the Stewards. They did not meet this burden. The Stewards contend that obtaining the property for this small price amounts to a windfall. There is, however, nothing in the record to indicate what, if any, equity the Stewards had at the commencement of the default proceedings. Moreover, "[a] naked assertion of

unresolved factual questions is not sufficient to oppose a motion for summary judgment." *Jacobsen v. State,* 89 Wn.2d 104, 111, 569 P.2d 1152 (1977). The record does not specifically disclose whether the property was subject to a mortgage on which the Stewards may have defaulted. There is, however, an indication in the record that an indebtedness was due and owing to Pacific First Federal Savings Bank. On the record before us, we cannot say the purchase price was inadequate. Therefore, the Goods were bona fide purchasers, they are entitled to claim the benefit of RCW 61.24.040(7),[1] and title in the property was properly quieted in them.

Courts have universally recognized that the mere inadequacy of price alone of property obtained at an execution sale provides insufficient reason for setting aside a sale. *See* Annot., *Inadequacy of Price as Basis for Setting Aside Execution or Sheriff's Sale—Modern Cases,* 5 A.L.R. 4th 794 (1981). However, the Stewards rely on *Miebach v. Colasurdo* for the proposition that "'when there is a great inadequacy, [additional] slight circumstances indicating unfairness will be sufficient to justify a decree setting the sale aside' on equitable grounds." (Citations omitted.) *Miebach,* at 177–78. As stated above, we do not find the purchase price inadequate. But even assuming, arguendo, the price was sufficiently low for a reasonable person to be put on inquiry notice, what would an inquiry in this case have produced? The result would have been the same. Most certainly there were procedural defects in the sale; however, those defects were not indicative of unfairness. The Stewards argue that the technical violations should be characterized as "slight circumstances indicating unfairness

---

[1]RCW 61.24.040(7) provides:

"The purchaser shall forthwith pay the price bid and on payment the trustee shall execute to the purchaser its deed; the deed shall recite the facts showing that the sale was conducted in compliance with all of the requirements of this chapter and of the deed of trust, which recital shall be prima facie evidence of such compliance and *conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value".* (Italics ours.)

surrounding the sale" and rely heavily on *Queen City Sav. & Loan Ass'n v. Mannhalt,* 49 Wn. App. 290, 742 P.2d 754 (1987), *review granted,* 109 Wn.2d 1020 (1988). In *Queen City,* the court cited with approval 1 V. Towne, Wash. Prac. § 605 (2d ed. 1976), wherein it is stated, "These foreclosure proceedings must conform exactly to the statute." In the case at bar, there is no doubt that the exact letter of the law has not been followed. However, we agree with the *Koegel* court which held that "*Queen City* did not foreclose a requirement that prejudice be established in order to void a sale where, as here, the trustee's error was a technical, formal error, nonprejudicial, and correctable." *Koegel,* at 113. So the question we must now answer is whether any of the technical violations have prejudiced the Stewards. It is true in the instant case that certain formalities were not followed. The record demonstrates noncompliance with the requirement that the trustee record the notice of sale 90 days prior to the actual sale. However, there is no showing of harm to the debtor. The Stewards do not deny receiving actual notice of the sale in the requisite time as provided by the statute. Thus they have failed to show any unfairness or that they have an equitable claim.

█ Finally, the Stewards waived any right to contest the trustee's sale by their failure to pursue the presale remedies provided in the act. *See Koegel v. Prudential Mut. Sav. Bank, supra* at 114–16. The doctrine of waiver has been defined as unilateral and arises by an intentional relinquishment of a known right or "such conduct as warrants an inference of the relinquishment of such right." *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954). The doctrine of waiver should be applied to post–sale remedies afforded the grantor/debtor pursuant to the Washington deed of trust act. The doctrine of waiver should preclude

an action by a party to set aside a completed trustee's sale whenever the party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to enjoin the sale. In

most cases, the statutory notices of foreclosure and trustee's sale should be sufficient to inform a party of the right to enjoin the sale. Furthermore, most substantive defenses to foreclosure arise early enough to permit the filing of a presale injunction action. Therefore, in most cases, a party's failure to bring a presale injunction action should be held to constitute a waiver of the right to contest the completed sale.

(Footnotes omitted.) Comment, *Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington,* 59 Wash. L. Rev. 323, 335 (1984).

Here, the Stewards do not dispute that they had actual notice of the sale. Each of their objections to the trustee's sale was or should have been known by them. They failed to bring an action to restrain the sale. Moreover, RCW 61.24.040(7) provides that the recital of statutory compliance in the deed of trust constitutes "prima facie evidence of such compliance and *conclusive* evidence thereof in favor of bona fide purchasers and encumbrancers for value". (Italics ours.) The evidence put forth by the Stewards does not appear to be sufficient to overcome such conclusive evidence. As noted above, the Goods have established themselves as bona fide purchasers.

The Washington deed of trust act specifically sets forth safeguards to protect against wrongful foreclosure, namely RCW 61.24.030(6)(j); RCW 61.24.040(2), wherein the grantor may contest the default; or RCW 61.24.130(1), wherein the grantor may enjoin or restrain the sale. The Legislature did not intend there to be further lengthy proceedings after the trustee's sale regarding possession of the property or challenges to the underlying obligation. *Peoples Nat'l Bank v. Ostrander,* 6 Wn. App. 28, 32, 491 P.2d 1058 (1971). It is true that challenges to the foreclosure procedure itself are properly raised in a subsequent action,[2] but the courts will not allow a grantor to delay asserting a

---

[2]*See Cox v. Helenius,* 103 Wn.2d 383, 693 P.2d 683 (1985). *Cf. Savings Bank v. Mink,* 49 Wn. App. 204, 741 P.2d 1043 (1987) (RCW 61.24 applied to unlawful detainer action).

defense to the default until after the sale because it would "defeat the spirit and intent of the trust deed act." *Ostrander*, at 32.

Inasmuch as the Stewards had adequate notice, there is no showing of prejudice. Each of the alleged wrongdoings could or should have been known to them; therefore, the Stewards should have brought a timely action to contest the default or restrain the sale. As the Stewards did not avail themselves of the statutory remedies available to them, they are precluded from doing so now. *See Sanwick v. Puget Sound Title Ins. Co.,* 70 Wn.2d 438, 441, 423 P.2d 624, 38 A.L.R.3d 315 (1967), wherein the court dismissed a claim on the basis that "the relief sought could have and should have been determined in a prior action."

The trial court is affirmed.

COLEMAN, A.C.J., and PEKELIS, J., concur.

Review denied by Supreme Court September 1, 1988.