# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROBERTA PODBIELANCIK, | ) | No. 72915-2-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| LPP MORTGAGE LTD.; | ) | |
| DOVENMUEHLE MORTGAGE, INC.; | ) | PUBLISHED OPINION |
| NORTHWEST TRUSTEE SERVICES, | ) | |
| INC.; MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC.; | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Respondents. | ) | FILED: December 14, 2015 |

SPEARMAN, C.J. — Roberta Podbielancik defaulted on a residential loan and her home was sold at a trustee's sale. On the day of the sale, the trustee continued the sale until the afternoon without announcing the continuance. There were no third party bidders and the holder of the note purchased the property. Podbielancik filed suit asserting, among other claims, that the trustee violated the deeds of trust act (DTA) and the sale was therefore invalid. The trial court dismissed her claims on summary judgment. We affirm. Although the trustee did not comply with the DTA, Podbielancik failed to show that she was prejudiced by the error.

## FACTS

Podbielancik took out a loan secured by a deed of trust on her home. She defaulted on the loan and did not cure the default. At the time of the default and foreclosure proceedings, LPP Mortgage, Ltd. (LPP) was the holder of the note, MGC Mortgage, Inc. (MGC) was the servicer, and Dovenmuehle Mortgage, Inc. (DMI) had a contract to sub-service the loan.

LPP appointed Northwest Trustee Services, Inc. (NWTS) as trustee. NWTS recorded a notice of trustee's sale (Notice). The Notice announced that the property would be sold at 10:00 a.m. on January 4, 2013. The Notice stated the principal balance of the loan as $404,832.95 and the amount of default as $74,077.16.

LPP authorized DMI, as the loan servicer, to enter a step-bid to purchase the property at the trustee's sale. The step-bid stated that LPP would open its bidding at $280,000 and would bid up to the total amount of the debt plus fees and costs, an amount that, according to the respondents, totaled $500,428.67. The minimum bid for the property was published as $500,429.00.

Podbielancik attended the sale on January 4, 2013. The property was not offered for sale at 10:00 a.m. and no announcement was made concerning the sale of the property. According to Jeff Stenman, a vice president of NWTS, NWTS instructed the auctioneer to postpone the sale until after 2:00 p.m. Stenman stated that NWTS often "holds" sales until the afternoon when it needs to review information concerning the foreclosure process. Clerk's Papers (CP) at 287. There were no third-party bidders and, according to Stenman, LPP purchased the property for its opening bid of $280,000 shortly after 2:00 p.m.

2

Podbielancik filed suit against LPP, DMI, NWTS, Mortgage Electronic Registration Systems, Inc. (MERS), and Does 1-10 (collectively "defendant" or "respondents"). She asserted claims for (1) declaratory relief; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) negligence; (5) unjust enrichment; (6) violations of the fair debt collection practices act (FDCPA); (7) violations of the Consumer Protection Act (CPA); (8) wrongful foreclosure; (9) breach of duty to act in good faith; (10) quiet title; and (11) accounting.[1]

The defendants moved for summary judgment. They submitted documentary evidence concerning the loan as well as declarations from representatives of MGC, DMI, and NWTS. Podbielancik opposed the motion as to all claims and all defendants. She argued, among other things, that the Stenman declaration was inadmissible.

The trial court concluded as a matter of law that Podbielancik defaulted, LPP was the holder of the note, notice of default was properly given, and the properly appointed trustee acted lawfully. The trial court further found that Podbielancik could show no unlawful act by a defendant that caused her actual injury. It thus granted summary judgment to all defendants on all claims. Podbielancik appeals.

<u>DISCUSSION</u>

Podbielancik first asserts that the trial court erred in considering inadmissible evidence. This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. <u>Camicia v. Howard S. Wright Constr. Co.</u>, 179 Wn.2d 684, 693, 317 P.3d 987 (2014). The de novo standard applies to evidentiary rulings on

---

[1] LPP had previously filed an unlawful detainer action. Podbielancik's claim was briefly consolidated with LPP's unlawful detainer action and removed to federal court. The actions were then bifurcated and remanded to state court.

admissibility. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). If a party fails to object to an affidavit or bring a motion to strike improper portions of an affidavit, any error is waived. Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 352, 588 P.2d 1346 (1979).

Podbielancik objects to the declaration of Jeff Stenman and the declaration of Mary Przbyla, vice president of DMI. She argues that both declarations contain hearsay not within any exception and the trial court therefore erred in considering them. However, because Podbielancik did not object to the Przybyla declaration below, she is precluded from challenging its admissibility here.

Podbielancik did object to the Stenman declaration in the trial court, and she repeats here her argument that the declaration is inadmissible because it testifies to the contents of business records not in evidence. The respondents argue that the declaration is admissible as testimony concerning business records. We agree with Podbielancik.

Business records are an exception to the hearsay rule and are admissible as evidence. See, RCW 5.45.020. A custodian or other qualified witness may testify as to the contents and admissibility of a business record that is offered into evidence. Id. The business records exception does not permit affidavits testifying to the contents of documents that are not in the record. Melville v. State, 115 Wn.2d 34, 36, 793 P.2d 952 (1990) (disallowing affidavit asserting facts learned from documents outside of the record). Testimony concerning the content of documents not in the record may be admissible under another hearsay exception or if it is not offered for its truth. Domingo v. Boeing Employees' Credit Union, 124 Wn. App. 71, 79-80, 98 P.3d 1222 (2004).

In this case, Stenman's declaration testifies to the contents of several business records. Most, but not all, of those records were submitted as exhibits. Podbielancik objects to four paragraphs of the Stenman declaration. Two of these, paragraphs 17 and 19, are relevant to Podbielancik's argument on appeal.[2] In paragraph 17, Stenman states that NWTS received a step-bid from LPP and testifies to the contents of that bid. The step-bid is not in the record.[3] In paragraph 19, Stenman states that NWTS's business records contain a sworn declaration from Vincent Wheaton, the NWTS agent who conducted the sale. Stenman declares that, according to Wheaton's statement, the "Rules of Auction" were properly read prior to the sale, the opening bid was announced, there were no third-party bids, and the property was sold to LPP at 2:02 p.m. for $280,000. CP at 287. The Wheaton statement is not in the record.

Because these statements testify to the contents of documents not in the record, they are not within the business record exception. The respondents provide no alternate grounds of admissibility. We accordingly hold that the trial court erred in considering the challenged portions of the Stenman declaration. We review the summary judgment dismissal of Podbielancik's claims without reference to the inadmissible evidence.

On summary judgment, the moving party bears the initial burden of showing that there is no genuine issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party then has the burden to rebut the moving party's contentions. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1,

---

[2] Podbielancik also objects to paragraphs 4 and 5 of the Stenman declaration. These concern LPP's referral to NWTS to commence foreclosure proceedings and are not relevant to her argument on appeal.

[3] Podbielancik assumes that the step-bid instructions were transmitted to NWTS in a document that is not in evidence and that Stenman did not have personal knowledge of the step-bid. The respondents do not refute the argument.

13, 721 P.2d 1 (1986). If the nonmoving party fails to "'establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" the court should grant summary judgment. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In reviewing a grant of summary judgment, any matters argued below but not raised on appeal are deemed abandoned. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 134, 317 P.3d 1074 review denied, 181 Wn.2d 1008, 335 P.3d 941 (2014) (citing Coggle v. Snow, 56 Wn. App. 499, 512, 784 P.2d 554 (1990)).

Podbielancik does not assign error on any specific cause of action, but she challenges generally the trial court's grant of summary judgment to the respondents. In particular, she appeals the trial court's conclusion that she was unable to show any unlawful act by respondents that caused her actual injury. Podbielancik does not address on appeal her claims for declaratory relief, unjust enrichment, violations of the fair debt collection practices act, quiet title, or accounting. We deem those claims abandoned.

Podbielancik argues that because the respondents violated the deeds of trust act, chapter 61.24 RCW (DTA) the court must set aside the trustee's sale. The DTA allows a trustee to sell a foreclosed property without judicial process. Albice v. Premier Mortg. Servs. of Washington, Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012). The Act promotes three purposes: to maintain an efficient and inexpensive nonjudicial foreclosure process, to provide an adequate opportunity to prevent wrongful foreclosure, and to promote the stability of land titles. Id. (citing Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). The statutory requirements must be strictly

complied with. Id. (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007)).

Podbielancik asserts that NWTS violated RCW 61.24.040(6)(a) by continuing the sale from 10:00 a.m. to 2:00 p.m. without announcing the continuance. The respondents argue that the sale was merely delayed, not continued within the meaning of the statute. We agree with Podbielancik.

RCW 61.24.040(6)(a) states:

> (6) The trustee ...may, for any cause the trustee deems advantageous, continue the sale for a period or periods not exceeding a total of one hundred twenty days by (a) a public proclamation at the time and place fixed for sale in the notice of sale and if the continuance is beyond the date of sale, by giving notice of the new time and place of the sale by both first class and either certified or registered mail . . . .

The statute sets a general rule that when a sale is continued, a proclamation must be made at the time and place set in the notice of sale. It then sets additional requirements for continuances that extend beyond the date of sale. By its plain language, RCW 61.24.040(6)(a) requires a proclamation for continuances both within and beyond the date fixed for the sale.

The respondents argue that requiring a proclamation when sales are merely delayed until later the same day leads to absurd results. At oral argument, the respondents asserted that delays are inevitable given that all trustee's sales are scheduled for 10:00 a.m. but the auctioneer calls them one at a time. This argument is inapposite because it does not address the facts of the present case. NWTS instructed the auctioneer to postpone the sale of Podbielancik's property until after 2:00 p.m. A decision to postpone a sale until a later time is a

7

continuance within the meaning of RCW 61.24.040(6)(a) and the respondents' efforts to characterize it as merely a "brief delay" are unavailing. We accordingly hold that NWTS violated the DTA by failing to make a public proclamation that it was continuing the sale from 10:00 a.m. to 2:00 p.m.

A violation of the DTA may, but does not always, invalidate a trustee's sale. Podbielancik argues that the failure to comply with RCW 61.24.040(6)(a) divested the trustee of its authority and rendered the sale invalid. Respondents argue that, if the lack of an announcement was error, it was a technical error that did not prejudice Podbielancik and thus cannot form the basis of a post-sale challenge.

Courts have set aside trustee's sales in cases of material noncompliance with the DTA. In Albice the court set aside a trustee's sale where the trustee continued the sale beyond the date it was statutorily authorized to sell the property. Albice, 174 Wn.2d at 568. In Bavand v. OneWest Bank, F.S.B., 176 Wn. App. 475, 309 P.3d 636 (2013), this court set aside a trustee's sale where the asserted beneficiary was not the holder of the note and the trustee was not properly appointed. In both Albice and Bavand, the statutory violations were such that the foreclosing party acted without authority to conduct the sale. In cases of minor or technical noncompliance, on the other hand, courts have required the plaintiff to show prejudice to set aside the sale. Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 113, 752 P.2d 385 (1988) (upholding sale where notice was defective but plaintiff had actual notice and could not show prejudice); Steward v. Good, 51 Wn. App. 509, 515, 754 P.2d 150 (1988) (upholding sale

8

where trustee did not timely record the notice of sale but plaintiff did not show prejudice).

The present case is distinguishable from Albice and Bavand because, although the trustee failed to comply with the proclamation requirement, it did not act beyond its statutory authority in postponing the sale. RCW 61.24.040(6) specifically permits NWTS to continue the sale "for any cause the trustee deems advantageous. . . ." RCW 61.24.040(6)(a), (b) set out the notice requirements for such a continuance. The failure to proclaim the continuance is thus a violation of a notice requirement, and is therefore similar to the violations of the DTA in Koegel and Steward. As in those cases, the question here is whether Podbielancik established prejudice from the error.

Podbielancik argues that she was injured because she lost her home to foreclosure, but she does not and cannot argue that this injury was caused by the lack of proclamation. Podbielancik was not prepared to bid on the property and did not know of anyone else who intended to bid. Had the trustee properly proclaimed the continuance, Podbielancik would still have lost her home to foreclosure. Without a showing of prejudice, the failure to comply with RCW 61.24.040(6)(a) does not render the sale invalid.

Podbielancik next argues that the respondents violated the CPA by publishing a "false minimum bid." Brief of Appellant at 19. To prevail on a CPA action, the plaintiff must show an unfair or deceptive act that caused injury to the plaintiff's business or property. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Podbielancik asserts

9

that LPP's step-bid was unfair and deceptive because the published minimum bid was $500,429 but LPP opened bidding at $280,000.

At a trustee's sale, the beneficiary may bid all or any part of the amount of its secured obligation without paying the trustee additional sums. RCW 61.24.070(2); Bert Kuty Revocable Living Trust ex rel. Nakano v. Mullen, 175 Wn. App. 292, 304-05, 306 P.3d 994 (2013). The respondents submitted evidence that LPP's step-bid authorized bidding up to the total debt owed on the loan plus fees and costs, an amount totaling $500,428.67. The "minimum bid" was represented as $500,429 because any third party bidder would have had to bid at least that much to prevail at auction. CP at 267-68. Podbielancik disputes the legitimacy of the step-bid and the amount of the debt plus fees and costs. However, she submitted no evidence to refute the evidence provided by the respondents.[4] She thus failed to "'make a showing sufficient to establish the existence of an element essential to [her] case,'" and summary judgment for the respondents was appropriate. Young, 112 Wn.2d at 225.

Podbielancik's claim that NWTS breached the trustee's duty of good faith as well as her claims for intentional misrepresentation, negligent misrepresentation, and negligence are all based on the allegedly false minimum bid. Because Podbielancik did not refute the evidence that the bid was legitimate, these claims also fail. We accordingly affirm the trial court's grant of summary judgment for the respondents on all claims.

---

[4] Podbielancik conducted no discovery.

Both parties request attorney fees on appeal. The general rule in Washington is that attorney fees will only be awarded when "authorized by contract, statute, or recognized ground of equity." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014) (citing Clausen v. Icicle Seafoods, Inc., 174 Wn.2d 70, 79, 272 P.3d 827, (2012)). Podbielancik requests attorney fees on appeal based on the CPA. Because her CPA claim is without merit, we decline her request.

The respondents request attorney fees based on the deed of trust, which authorizes the lender to recover attorney fees in any action to "construe or enforce" the instrument. Brief of Respondent at 29. The request for attorney fees based on the deed is applicable only to LPP, who took the deed of trust by assignment and acquired all rights and obligations thereunder. The present appeal is an action to enforce the deed, as it stems from Podbielancik's complaint alleging that LPP had no right to demand payments from Podbielancik or institute foreclosure proceedings against her. We therefore award attorney fees to LPP, upon compliance with RAP 18.1.

Affirmed.

WE CONCUR: